IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| LITTLE HARBOR HOLDING, INC., a Delaware corporation, LITTLE HARBOR DEVELOPMENT, LP, a Delaware limited partnership, and PENINSULA PROPERTY HOLDINGS VIII LLC, a Delaware limited liability company,<br><br>*Plaintiffs*,<br><br>v.<br><br>LITTLE HARBOR SMI, LLC, a Delaware limited liability company, as Assignee of SUNTEX MARINA INVESTORS LLC, a Delaware limited liability company,<br><br>*Defendant*. | Case No. _____ |

## COMPLAINT

Plaintiffs, Little Harbor Holding, Inc. ("LHH"), Little Harbor Development, LP ("LHD"), and Peninsula Property Holdings VIII LLC ("Peninsula") (individually a "Plaintiff," and collectively "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Complaint against Defendant Little Harbor SMI, LLC ("LHS"), as Assignee of Suntex Marina Investors LLC ("Suntex"), based upon the provisions of a Post-Closing Liability Escrow Agreement (the "Escrow Agreement") entered into by and between the Parties on October 19, 2021.[1]

## INTRODUCTION

1. This action arises out of the sale of certain real property located in Ruskin, Florida, which is part of a larger master planned community known as "Little Harbor" (the "Subject Property").

---

[1] A copy of the Escrow Agreement is attached hereto as Exhibit A.

2. The property at issue includes, *inter alia*, a marina, restaurant, tennis courts, offices, and certain other buildings and parcels.

3. Suntex originally entered into a purchase agreement (the "Purchase Agreement") related to the Subject Property with Plaintiffs, however, prior to closing, Suntex assigned its interest in the Purchase Agreement to LHS.[2]

4. Thereafter, Plaintiffs and LHS entered into the Escrow Agreement,[3] whereby certain funds (the "Escrow Fund") were held in escrow in order to compensate LHS for any potential future breaches by Plaintiffs of any representations or warranties contained within the Purchase Agreement which survived the closing of the sale of the Subject Property by Plaintiffs to LHS. *See* Ex. B, § 11.4 ("If [LHS] has a claim for beach … [LHS] shall be compensated for its damages arising from such breach from" the Escrow Fund); *see also* Ex. A, § B.

5. Pursuant to the Escrow Agreement, the Escrow Fund was to be held in escrow for a period of one year, after which time it was to be transferred to Plaintiffs unless LHS properly brought a claim that Plaintiffs had somehow breached certain representations and warranties contained within the Purchase Agreement. *See Id.* at § 1.4.

6. Pursuant to the Escrow Agreement, in the event that a breach is claimed by LHS, the portion of the Escrow Fund subject to said claim (the "Claimed Funds") will remain in escrow until either (i) the Parties jointly agree as to the distribution of the Claimed Funds, or (ii) judgment is entered by a court of competent jurisdiction ordering the disbursement of the Claimed Funds. *See Id.* at § 1.3(b).

---

[2] A copy of the Purchase Agreement is attached hereto as Exhibit B.

[3] The form of the Escrow Agreement was originally proscribed by, and agreed to as part of, the Purchase Agreement. *See* Ex. B, § 11.4 (stating that the Parties shall "execute a Post-Closing Liability Escrow Agreement … in the form of Exhibit G …").

7. On October 18, 2022, LHS claimed that Plaintiffs had committed a breach of the aforementioned representations and warranties and claimed entitlement to the entirety of the Escrow Fund.

8. Plaintiffs now seek a judgment finding that (i) Plaintiffs have not breached any applicable representation, warranty, covenant, or obligation, (ii) LHS is not entitled to any portion of the Escrow Fund, and (iii) the Escrow Fund shall be immediately disbursed to Plaintiffs pursuant to the Escrow Agreement.

**PARTIES**

9. LHH is a Delaware corporation with a principal place of business located at 6-3030 Midland Avenue, Scarborough, Ontario, Canada M1S 5C9.

10. LHD is a Delaware limited partnership with a principal place of business located at 6-3030 Midland Avenue, Scarborough, Ontario, Canada M1S 5C9.

11. Peninsula is a Delaware limited liability company with a principal place of business located at 6-3030 Midland Avenue, Scarborough, Ontario, Canada M1S 5C9.

12. LHS is a Delaware limited liability company with a principal place of business located at 17330 Preston Road, Suite 220A, Dallas, Texas 75252.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) as the amount in controversy exceeds $75,000.00, and the parties have complete diversity of citizenship.

14. Venue is proper in this District as the Parties have submitted to jurisdiction in federal court in Hillsborough County, Florida, which is the county where the Subject Property is located. *See Id.* at § 3.10.

## ALLEGATIONS

15. The Subject Property includes a mixed use development consisting of various improvements including, *inter alia*, two marinas, restaurant buildings, office buildings, parking facilities, and related appurtenances, all located within a master planned community known as "Little Harbor" in Ruskin, Florida.

16. On July 26, 2021, the Suntex entered into the Purchase Agreement with Plaintiffs, whereby Suntex agreed to purchase the Subject Property from Plaintiffs.

17. On October 18, 2021, Suntex assigned "all of its right, title and interest" in the Purchase Agreement to LHS.

18. The sale of the Subject Property by Plaintiffs to LHS closed on October 19, 2021, the same day on which Plaintiffs and LHS entered into the Escrow Agreement in substantially the same form as set forth in Exhibit G to the Purchase Agreement.

19. The Escrow Agreement required Plaintiffs to place $540,000.00 into escrow for the purpose of compensating LHS in the event that Plaintiffs breached "any representation, warranty, covenant or other obligation of [Plaintiffs] that survive Closing." Ex. A, § B.

20. The Parties jointly appointed MBL Title LLC ("MBL") to serve as escrow agent under the Escrow Agreement. *See Id.* at § 1.1.

21. Pursuant to the Escrow Agreement, the Escrow Fund was to remain in escrow for a period of one year after which time any funds not subject to a properly brought claim made by LHS would be disbursed to Plaintiffs. *See Id.* at § 1.4.

22. Put another way, if LHS wished to prevent any portion of the Escrow Fund from being disbursed to Plaintiffs after the one year anniversary of the closing of the sale of the Subject Property to LHS, to wit, on or before October 19, 2022, LHS was required to tender written notice

(a "Claim Notice") to MBL and Plaintiffs identifying LHS's claim to any such portion of the Escrow Fund. *See Id.* at § 1.3(a).

23. The Escrow Agreement mandated that a Claim Notice (i) "describe[e] in reasonable detail the nature of [the claimed] breach," (ii) certify that LHS "is entitled to payment under the Purchase Agreement," and (iii) "identify[] the estimated amount of such payment." *Id.*

24. On October 18, 2022, LHS tendered a notice to Plaintiffs (the "LHS Notice") wherein LHS claimed that it was entitled to the entirety of the Escrow Fund.[4]

25. The LHS Notice was premised upon a claim (the "Hooks Claim") of reimbursement, in the amount of approximately $288,432.00, made by a third party, to wit, Hooks Bar and Grill, LLC ("Hooks"), the operator of a restaurant located on the Subject Property, pursuant to a commercial lease (the "Assumed Lease") which was assumed by LHS as part of the sale of the Subject Property by Plaintiffs to LHS. *See* Ex. C.

26. The Hooks Claim asserts that LHS breached the Assumed Lease by, *inter alia*, attempting to terminate the Assumed Lease without negotiating in good faith to allow Hooks to relocate its restaurant to another location within the Subject Property. *See Id.* at Ex. 1.

27. Upon information and belief, LHS tendered its notice of termination of the Assumed Lease to Hooks on or about February 8, 2022, nearly four (4) months after closing of the sale of the Subject Property by Plaintiffs to LHS, as well as LHS's assumption of the Assumed Lease. *See Id.*

28. In the LHS Notice, LHS claims that Plaintiffs have committed three breaches of the Purchase Agreement: (i) that Plaintiffs failed to pay certain amounts due and owing at the time of closing that arose under certain third party leases related to the Subject Property, as is allegedly

---

[4] A copy of the LHS Notice is attached hereto as Exhibit C.

required under Section 10.12 of the Purchase Agreement; (ii) that Plaintiffs failed to disclose its knowledge of Hooks' purported "entitle[ment] to any concession, rebate, [or] allowance" under the Assumed Lease, as is allegedly required under Section 11.1(c)(i) of the Purchase Agreement; and (iii) that Plaintiffs have failed to indemnify LHS against Hooks' claims, as is allegedly required under Section 13.2 of the Purchase Agreement.

29. The claims set forth in the LHS Notice, however, are baseless, and LHS is not entitled to any portion of the Escrow Fund.

30. Under the Escrow Agreement, Plaintiffs are not obligated to disclose, pay, or indemnify against any claims of entitlement by third parties which did not exist at the time of closing. *See* Ex. B, § 10.12 ("[Plaintiffs] agree to pay or discharge at or prior to Closing all … costs for tenant improvements, legal fees and other costs and expenses … *that are due* with respect to leases in force as of or prior to the Effective Date …") (emphasis added).

31. Clearly, the use of the phrase "that are due" in the Purchase Agreement only contemplates obligations which were in existence (i.e. "due") at the time of closing, and not obligations which may have subsequently arisen in relation to leases assumed by LHS as part of the sale of the Subject Property.

32. In fact, the Purchase Agreement explicitly states that LHS shall assume any such obligations that become due after closing. *See Id.* ("As of Closing, [LHS] shall assume [Plaintiffs'] obligations for Leasing Costs incurred with respect to leases and lease renewals and extensions executed subsequent to the Effective Date.").

33. Nothing in the Purchase Agreement stands for the proposition that Plaintiffs would somehow be responsible for contingent obligations under leases with third parties assumed by LHS which arose after closing.

34. Plaintiffs did not agree in either the Purchase Agreement or Escrow Agreement to reimburse LHS for obligations incurred by LHS as a direct result of its own conduct (e.g. by attempting to terminate its lease with Hooks) which occurred after closing.

35. Put another way, but for LHS's attempt to terminate its lease with Hooks, the reimbursement claims made by Hooks would have never arisen, and nothing in the Purchase Agreement obligates Plaintiffs to assume responsibility for such a contingent obligation where the acts giving rise thereto occurred entirely after closing.

36. Additionally, prior to closing, LHS was aware of both the potential of the Hooks Claim, and the amount of any such claim, as Hooks sent a letter dated September 15, 2021 (the "Estoppel Certificate"), to Suntex, the predecessor in interest to LHS with respect to the purchase of the Subject Property, which identified the clause in the Assumed Lease which gave rise to the Hooks Claim, and which attached an email which identified the amounts expended by Hooks with respect to improvements made by Hooks to the leased premises under the Assumed Lease.[5] *See* Ex. D, ¶ 5.

37. The Estoppel Certificate also represents that, at the time of said letter, Plaintiffs were not in default under the Assumed Lease and, at that time, Hooks possessed no claim against Plaintiffs. *See Id.* at ¶¶ 6-7.

38. Ultimately, LHS's claims under the Escrow Agreement are baseless, as (i) LHS was on notice of any potential obligation that could have been imposed upon LHS by Hooks in light of the Estoppel Certificate which LHS received prior to closing and (ii) any obligation so imposed upon LHS was due solely to the actions of LHS and not to any action taken, or not taken, by Plaintiffs.

---

[5] A copy of the Estoppel Certificate is attached hereto as Exhibit D.

39.     Separately, LHS cannot freeze portions of the Escrow Fund currently in escrow where said funds do not relate to any claim properly set forth by LHS under the Escrow Agreement. *See* Ex. A, § 1.4.[6]

40.     The amount of the reimbursement claim made by Hooks, to wit, in the amount of $288,432.00, is for significantly less than the total amount of the Escrow Fund, such that, even during the pendency of LHS's claim under the Escrow Agreement, the portion of the Escrow Fund not subject to said claim must be disbursed to Plaintiffs.

## COUNT I
### Declaratory Judgment
**(As to LHS's claims under the Escrow Agreement)**

41.     Plaintiffs hereby incorporate each and every allegation of paragraphs 1 through 40 of the complaint as though fully set forth herein.

42.     An actual controversy exists between Plaintiffs and LHS such that this Court may declare the rights and other legal relations of the Parties with respect to the claim made by LHS against the Escrow Fund pursuant to the Escrow Agreement.

43.     A controversy exists with respect to the rights and obligations of Plaintiffs and LHS related to the disbursement of the Escrow Fund and LHS's claim made in relation thereto.

44.     Given that (i) the period for claims has expired, (ii) LHS has made a claim under the Escrow Agreement, and (iii) the Escrow Fund has not been disbursed to either party, the controversy is neither hypothetical nor moot, and is ripe for adjudication.

---

[6] In addition to the amount specifically claimed in a Claim Notice, the Escrow Agreement also contemplates the holding back of "the amount of any attorneys' fees and expenses incurred (or estimated in good faith to be incurred) in connection with" the adjudication of any claims contained within the Claim Notice. *See* Ex. A, § 1.4. In order to be entitled to a holdback of estimated attorneys' fees, LHS was required to provide written notice of the actual or estimated fees no later than one day prior to the one-year anniversary of the closing date, to wit, on or before October 18, 2022. *See Id.* Prior to that date, LHS tendered only one Claim Notice, to wit, the LHS Notice, which fails to identify any actually incurred or estimated attorneys' fees. *See* Ex. C. As such, LHS has waived any entitlement it may have had to any holdback of attorneys' fees during the pendency of its claims under the Escrow Agreement.

45. LHS's claim made under the Escrow Agreement is baseless because (i) the basis for said claim, to wit, the Hooks Claim, is entirely based upon the actions of LHS which occurred after closing, such that Plaintiffs can have no responsibility or obligation with respect thereto, and (ii) LHS was aware of the potential of the Hooks Claim as well as the amount of such claim prior to closing.

46. Despite the baselessness of LHS's claim, the Escrow Fund will not be disbursed until judgment is entered by a court of competent jurisdiction on behalf of Plaintiffs.

47. Accordingly, Plaintiffs are entitled to a declaration that LHS's claim is without merit and that the Escrow Fund should be immediately disbursed to Plaintiffs.

48. Plaintiffs are also entitled to all reasonable fees and expenses, including attorney's fees, incurred by Plaintiffs in the prosecution of the instant action. *See* Ex. B, § 12.3.

### COUNT II
### Declaratory Judgment
### (As to funds held in escrow not subject to LHS's claims)

49. Plaintiffs hereby incorporate each and every allegation of paragraphs 1 through 40 of the complaint as though fully set forth herein.

50. An actual controversy exists between Plaintiffs and LHS such that this Court may declare the rights and other legal relations of the Parties with respect to certain funds currently being held in escrow by MBL which do not relate to the claim made by LHS against the Escrow Fund pursuant to the Escrow Agreement.

51. A controversy exists with respect to the rights and obligations of Plaintiffs and LHS related to the disbursement of said funds unrelated to the claim asserted by LHS.

52. Given that (i) the period for claims has expired, (ii) LHS has made a claim under the Escrow Agreement, and (iii) the amount of said claim is known and there can be no further

claims made by LHS under the Escrow Agreement, the controversy is neither hypothetical nor moot, and is ripe for adjudication.

53. Any funds held in escrow which are not the subject of a properly brought claim by LHS pursuant to the Escrow Agreement should have been distributed to Plaintiffs after the one year anniversary of the date of closing, to wit, on October 19, 2022. *See* Ex. A, § 1.4.

54. It is known that the only claim made by LHS pursuant to the Escrow Agreement is the Hooks Claim, which is in the amount of $288,432.00.

55. There can also be no dispute that LHS did not make a claim for attorney's fees, either already incurred or anticipated, pursuant to the Escrow Agreement within the period proscribed for such claims to be made. *See Id.*

56. As such, there remain funds held in escrow by MBL, in the amount of $255,568.00, which are not subject to any claim made by LHS pursuant to the Escrow Agreement, and which must be disbursed to Plaintiffs immediately, even prior to the adjudication of Plaintiffs' claim in Count I. *See Id.*

57. Plaintiffs are also entitled to all reasonable fees and expenses, including attorney's fees, incurred by Plaintiffs in the prosecution of the instant action. *See* Ex. B, § 12.3.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment as follows:

(a) That this Court enter judgment declaring that LHS claim is without merit;

(b) That this Court enter judgment declaring that the Escrow Fund be disbursed to Plaintiffs;

(c) That prior to entering a final order with respect to Count I, this Court enter judgment ordering the immediate disbursement of $255,568.00 to Plaintiffs,

as said amount is not in controversy or subject to any claim properly brought by LHS pursuant to the Escrow Agreement;

(d) That this Court enter judgment ordering LHS to pay Plaintiffs all reasonable fees and expenses, including attorney's fees, incurred by Plaintiffs in the prosecution of the instant action; and

(e) For such other and further relief as the Court may deem equitable and just.

Dated: February 8, 2023                                  Respectfully Submitted,

_/s/ *Edward Vogler II*_____
Edward Vogler II
Florida Bar No. 0380970
Email: edvogler@voglerashton.com
**VOGLER ASHTON, PLLC**
705 10th Avenue West, Unit 103
Palmetto, Florida 34221
Telephone: (941)304-3400
Facsimile: (941)866-7648

-and-

_/s/ *Matthew Edward Vogler*_____
Matthew Edward Vogler
Illinois ARDC No. 6317714
Email: mvogler@voglerlegal.com
**VOGLER & ASSOCIATES, LTD.**
850 Euclid Avenue, Suite 1026
Cleveland, Ohio 44114
Telephone: (216)966-2216
Facsimile: (216)966-2216

*Pending Admission Pro Hac Vice*

**Attorneys for Plaintiffs Little Harbor Holding, Inc., Little Harbor Development, LP, and Peninsula Property Holdings VII LLC**